MINNESOTA HOLSTEIN-FRIESIAN BREEDERS ASSOCIATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Minnesota Holstein-Friesian Breeders Ass'n
Docket No. 5160-90
United States Tax Court
T.C. Memo 1992-663; 1992 Tax Ct. Memo LEXIS 701; 64 T.C.M. (CCH) 1319; November 16, 1992, Filed *701 Decision will be entered for respondent. For Petitioner: Peter J. Fuchsteiner, and Steven B. Kutscheid. For Respondent: Gail Gibson. PETERSON
PETERSON
MEMORANDUM FINDINGS OF FACT AND OPINION PETERSON, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b) and Rules 180, 181, and 182. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined deficiencies in petitioner's Federal income taxes for its taxable years 1985 and 1986 in the amounts of $ 4,037.64 and $ 1,443, respectively. Respondent also determined that petitioner is liable for an addition to tax for 1986 pursuant to section 6651(a)(1), in the amount of $ 361. Petitioner is an organization exempt from taxation under section 501(c)(5). This case involves sections 511 through 513 of the Internal Revenue Code, dealing with the taxation of an exempt organization's receipt of unrelated business income. The sole issue for decision is whether income generated by petitioner's sale of advertising in its publications during the years *702 in issue is taxable as unrelated business taxable income. Petitioner concedes that it is liable for the addition to tax for 1986. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. At the time its petition was filed, petitioner's principal place of business was in St. Cloud, Minnesota. Petitioner is a corporation organized under Minnesota law. Petitioner qualified as a tax-exempt organization under section 501(c)(5) during the years in issue. Petitioner's essential purposes as an organization are to improve the breed of Holstein-Friesian cattle, disseminate useful knowledge and information concerning the desirable qualities of the breed, and promote and develop a market for the breed and its products. Petitioner's main purpose is to improve the breed. Petitioner defines "improvement" as production increases in categories such as pounds of milk, butterfat and protein per animal, as well as improved functional development in the actual physical structure of Holstein-Friesian cattle. Petitioner believes that the surest way to achieve its goal of improving the breed is *703 to promote matings between the best available male Holstein-Friesians (sires) and the best available female Holstein-Friesians (dams). Petitioner believes that such matings will improve the breed over time by passing the genes of the best available cattle from generation to generation. In furtherance of its tax-exempt purposes, petitioner publishes both a magazine entitled the "Minnesota Holstein News", and a tabloid entitled the "Midwest Holstein News". Each publication focuses on cattle breeding and cattle care and contains information regarding veterinary medicine, selection of a proper bull for siring (mating) purposes, reports on industry trends, and other cattle-related topics. Petitioner publishes the "Minnesota Holstein News" four times per year and publishes the "Midwest Holstein News" eight times per year. Each issue of each publication contains various types of advertisements. Some ads are related to the farming profession generally, some are related specifically to cattle breeding, and others are unrelated to any aspect of the farming or cattle breeding professions. OPINION Section 501(c)(5), in conjunction with section 501(a), provides generally that "labor, agricultural *704 or horticultural organizations" are exempt from taxation. Organizations contemplated by section 501(c)(5) as exempt from taxation are those which have no earnings inuring to the benefit of any member, and which have as their objects: (1) The betterment of the conditions of those engaged in agricultural pursuits; (2) the improvement of the grade of their products; and (3) the development of a higher degree of efficiency in their agricultural occupations. California Thoroughbred Breeders Association v. Commissioner, T.C. Memo. 1989-342; sec. 1.501(c)(5)-1(a), Income Tax Regs.
Notwithstanding this general exemption from taxation, section 511(a) imposes a tax on the "unrelated business taxable income" of section 501(c)(5) organizations. Sec. 511(a)(1) and (a)(2)(A). "Unrelated business taxable income" is the gross income derived by an organization from any "unrelated trade or business" regularly carried on by it, less deductions allowed for expenses directly connected with the carrying on of the trade or business, with modifications described in section 512(b). Sec. 512(a)(1). An "unrelated trade or business" is any trade or business whose conduct *705 is not substantially related to the exercise or performance of the tax-exempt organization's purpose other than through the need for or the use of funds produced. Sec. 513(a). Expressed as a legal test, income from an activity engaged in by a section 501(c)(5) organization is considered unrelated business taxable income (UBTI) if: (1) The activity constitutes a trade or business; (2) the trade or business is regularly carried on by the organization; and (3) the conduct of the trade or business is not substantially related to the organization's exempt purpose, other than through the need for or the use of the funds it produces. United States v. American College of Physicians, 475 U.S. 834 (1986); California Thoroughbred Breeders Assn. v. Commissioner, supra; sec.1.513-1(a), Income Tax Regs. The test is conjunctive, and UBTI exists only if each element is established. Veterans of Foreign Wars, Mich. v. Commissioner, 89 T.C. 7, 19-20 (1987). It is undisputed that during the years in issue, petitioner regularly engaged in advertising activity in connection with its publication of both *706 the "Minnesota Holstein News" magazine and the "Midwest Holstein News" tabloid. Since it is settled law that advertising constitutes a trade or business for purposes of sections 511 through 513, we are concerned in this case only with the third element of the test. Sec. 513(c); United States v. American College of Physicians, supra at 839. Accordingly, petitioner is liable for tax on its advertising activity during the years in issue if the activity was not substantially related to one of its tax-exempt purposes other than through the need for or the use of the proceeds generated. Petitioner has the burden of proving that its advertising activity during the years in issue was substantially related to one of its tax-exempt purposes. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); California Thoroughbred Breeders Assn. v. Commissioner, supra.
A substantial relationship existed between petitioner's advertising activity and a tax-exempt purpose during the years in issue if the advertising contributed importantly to the accomplishment of the tax-exempt purpose. United States v. American College of Physicians, supra at 847; *707 California Thoroughbred Breeders Assn. v. Commissioner, supra; sec. 1.513-1(d)(2), Income Tax Regs.
Whether the advertising contributed importantly to one of petitioner's tax-exempt purposes depends upon the manner in which petitioner conducted its advertising activity. United States v. American College of Physicians, supra at 849; Florida Trucking Association v. Commissioner, 87 T.C. 1039, 1043-1044 (1986). The implication of the governing statutes and regulations in this case is that we must place our emphasis and analysis on the manner in which published ads are designed and selected. Unless ads selected for publication are designed to provide readers with a comprehensive or systematic presentation of some aspect of the tax-exempt organization's essential purposes, the income from the organization's advertising activity is subject to the tax on UBTI. United States v. American College of Physicians, supra at 849; see sec. 1.513-1(d)(4)(iv), Example (7), Income Tax Regs. Accordingly, unless the evidence shows that petitioner conducted *708 its advertising activity in a manner designed to focus on improving the breed of Holstein-Friesian cattle or some other tax-exempt purpose, the advertising did not contribute importantly to any of petitioner's tax-exempt purposes, and the income from the activity is subject to taxation. United States v. American College of Physicians, supra.
Based on the evidence in this case, we find that petitioner's advertising activity did not contribute importantly to any of petitioner's tax-exempt purposes. We therefore hold that petitioner's advertising activity was not substantially related to any of petitioner's tax-exempt purposes. Accordingly, we conclude that the income petitioner received from its advertising activity is subject to the tax on UBTI. We reject petitioner's argument that all of the published advertising in the "Minnesota Holstein News" and the "Midwest Holstein News" provides breeders with information designed to help improve the quality of the breed of Holstein-Friesian cattle, and that none of the published advertising is "purely" commercial in nature. We agree with petitioner that some of its published advertisements focused on *709 providing essential breeding information, which enabled readers to better understand which types of matings most effectively enhance production qualities. We also agree that some of its published ads provided essential breeding information by promoting auction sales of Holstein-Friesian cattle, at which breeders are afforded the opportunity to purchase "top rated" cattle appropriate for such matings. Cf. California Thoroughbred Breeders Association v. Commissioner, T.C. Memo. 1989-342 (auction of thoroughbred horses provided opportunity to select animals with proper characteristics to improve their breeds, and held substantially related to tax-exempt purpose of improving breed of horses). Nonetheless, despite those advertisements and despite petitioner's posturing, the evidence is clear that during the years in issue petitioner published numerous ads which had no real relationship to improvement of the breed of Holstein-Friesian cattle or to any other tax-exempt purpose. It is the presence of such advertising, some of which is described in the paragraph below, which serves as the basis for our conclusion that petitioner is liable for tax on the income *710 from its advertising activity. For example, petitioner, during the years in issue, published commercial advertisements from a law firm specializing in agriculture law suits, a feed company selling kiln dried feed, a law firm specializing in agricultural and financial planning, a company selling silos, a fine dining restaurant and a pub, an automotive center, various hotels, motels and inns, businesses offering services such as hoof trimming, livestock photography, livestock trucking and Holstein cattle insurance, and an ad from a company out of Sandy Creek, New York, promoting a "deluxe hardbound edition" of a book detailing the "exciting story of Holstein growth". Some of these ads are dispersed throughout the periodicals; others are grouped together in a commercial advertising section specifically designed for ads by breeders and businesses offering services to breeders. Although many of these advertisements relate to the farming profession generally, each must be considered purely commercial in nature for purposes of this case. Advertisements such as these may be of incidental benefit to breeders in running their day-to-day operations, but they do not contribute importantly *711 to improving the quality of the breed of Holstein-Friesian cattle. They provide no information which might enable breeders to better determine successful matings between dams and sires, and thus offer no help to breeders trying to improve the quality of their herd's lineage in particular, and the breed in general. Nor do we think they directly serve any of petitioner's other tax-exempt purposes, since their focus is not on disseminating knowledge about the desirable qualities of the breed or on broadening a market for the breed and its products. In our view, petitioner did not publish these ads in a manner designed to provide readers with a comprehensive or systematic view of some aspect of its tax-exempt purposes. Rather, we believe the placement of these ads in petitioner's publications more directly reflects and more directly serves the interests of the particular paying advertiser's consumer marketing strategy, and that any educational purpose the ads may serve is merely incidental to their primary commercial purpose. In short, the essential function of these ads is no different from that of any other commercial ads, which is to stimulate demand for the advertised product *712 and to raise revenue for the publisher. In selecting and publishing these types of ads during the years in issue, petitioner did not display the requisite commitment to keep advertising focused on furthering one or more of its tax-exempt purposes. United States v. American College of Physicians, 475 U.S. 834, 849 (1986). Accordingly, we hold that petitioner's advertising activity during the year in issue was not substantially related to any of its tax-exempt purposes. Accordingly, we reiterate our conclusion in this case that the income from petitioner's advertising activity is subject to the tax on UBTI. Decision will be entered for respondent.